UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00533-GNS

JAMES HALBAUER, JR.                                                                                    PLAINTIFF

v.

LOUIS DEJOY                                                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 15). The matter is ripe for adjudication. For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   STATEMENT OF FACTS

Plaintiff James Halbauer, Jr. ("Halbauer") is a Caucasian male who was employed as a mail carrier for the United States Postal Service ("USPS") in Louisville, Kentucky. (Compl. ¶ 8, DN 1). On August 22, 2019, before clocking in, Halbauer showed up to work wearing a "MAGA" hat (presumably referencing former President Donald Trump's slogan to "Make America Great Again"), when an African-American co-worker, Mashalina Spicer ("Spicer"), yelled at him from across the room, calling him a "racist" numerous times. (Compl. ¶ 9). In response a union steward asked Spicer to stop yelling, to which Spicer replied with profanity. (Compl. ¶ 11). The steward did not address the situation any further. (Compl. ¶ 12). After Halbauer clocked in, he removed his hat. and a different supervisor allegedly confronted him and told him that if he wore the hat again, the supervisor would escort him from the premises. (Compl. ¶¶ 15-16). Roughly a week later, Spicer wore a hat to work and refused to remove it even after Halbauer notified their supervisor. (Compl. ¶ 17). In another instance, Spicer showed up to work out of uniform. (Compl.

¶ 20). She was instructed by her supervisor to put on her uniform and deliver mail, but she refused. (Compl. ¶ 20). The supervisor, again, did nothing. (Compl. ¶ 20). On November 25, Spicer wore sneakers in violation of a USPS regulation requiring mail carriers wear leather shoes; she was not required to change. (Compl. ¶ 22). Days later, a supervisor posted an "edict" requiring every employee to be in the correct uniform while at work and that failure to do so would result in the employee being sent home. (Compl. ¶ 23). Regardless, on December 20, 2019, Halbauer and other employees arrived at work wearing sneakers but unlike Spicer they were required to change into leather shoes, despite the fact that Halbauer had previously provided a doctor's note allowing him to wear sneakers. (Compl. ¶ 24).

Again, on January 9, 2020, Spicer came to work wearing sneakers, but this time the supervisor asked her why she was wearing the wrong shoes, to which she responded with belligerent expletives. (Compl. ¶ 25). Halbauer was nearby and asked his supervisor to stop Spicer from uttering blasphemy as it offended him. (Compl. ¶ 26). The supervisor asked her to calm down, but Spicer screamed additional invectives. (Compl. ¶ 28).

While some of these incidents were ongoing, Halbauer and other employees collectively notified the Louisville Postmaster of Spicer's conduct and management's failure to correct it. (Compl. ¶¶ 19, 21). Halbauer in particular claims to have notified his supervisors multiple times about Spicer's language, but to no avail. (Compl. ¶ 29). For example, after Halbauer was required to remove his hat but Spicer was not, Spicer approached Halbauer and bragged that she was allowed to wear her hat. (Compl. ¶ 18). Halbauer had immediately notified his supervisors of this comment, but no action was taken. (Compl. ¶ 18). The Louisville Postmaster ultimately did not respond to any of their complaints. (Compl. ¶ 21). Halbauer alleges acts by white employees, like

those committed by Spicer, have resulted in discipline up to and including termination. (Compl. ¶ 33).

Halbauer asserts that because of his supervisors' discrimination and Spicer's religious harassment and abusive language, he was unable to continue working at the USPS and had to enter counseling. (Compl. ¶ 30). Halbauer filed an EEO complaint on May 1, 2020, which was denied, giving him a right to file suit within ninety days. (Compl. ¶ 7). Halbauer accordingly sued Defendant Louis DeJoy ("Defendant"), the Postmaster General of the USPS, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for reverse discrimination and a hostile work environment, a claim under the Kentucky Civil Rights Act ("KCRA"), and a claim for the tort of negligent infliction of emotional distress ("NIED"). (Compl. 5-8). Defendant moved to dismiss. (Def.'s Mot. Dismiss, DN 15).

## II. STANDARD OF REVIEW

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). In order to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading need not

contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).

### III. DISCUSSION

#### A. State Law Claims

Defendant has moved to dismiss Halbauer's state law claims for numerous reasons, to which Halbauer responded only, "[w]hile [the] state law claims for discrimination, and negligent infliction of emotional distress may not survive Defendant's motion to dismiss, his clams for hostile work environment based on religion and reverse discrimination must survive Defendant's motion." (Pl.'s Resp. Def.'s Mot. Dismiss 6, DN 18). Accordingly, Halbauer waived any argument in support of these claims and the Court therefore dismisses his state law claims.

#### B. Title VII

Halbauer maintains the gravamen of his Complaint is disparate treatment based on his race, and the creation of a hostile work environment based on his religion.[1] (Pl.'s Resp. Def.'s Mot. Dismiss 6).

##### 1. *Discrimination*

To establish a *prima facie case* of employment discrimination, a plaintiff must demonstrate: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v.*

---

[1] In the Complaint, Halbauer asserts that he is a white Christian male and that had Spicer's conduct been directed at a member of a protected class by a member of the majority, disciplinary action would have been taken, and that the same is true for the allegedly "anti-Christian" acts described. (Compl. ¶ 34). Halbauer alleges he was further discriminated through the USPS's failure to address Spicer's conduct, which resulted in a hostile work environment. (Compl. ¶ 40).

4

*Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citation omitted). In cases of reverse discrimination where a member of the majority claims discrimination, to satisfy the first prong of the *prima facie* case a plaintiff must "demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (alteration in original) (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)).

Prong one "is not onerous, and can be met through a variety of means, such as statistical evidence; employment policies demonstrating a history of unlawful racial considerations; evidence that the person responsible for the employment decision was a minority; or general evidence of ongoing racial tension in the workplace." *Johnson v. Metro. Gov't of Nashville & Davidson Cty.*, 502 F. App'x 523, 536 (6th Cir. 2012) (citation omitted). Halbauer alleges other white employees engaged in conduct like Spicer's but that, unlike Spicer, they were disciplined for it and some were terminated. Halbauer also alleges he and other employees were made to change shoes for violating a dress code, which Spicer violated without consequence; and that he and other employees complained about Spicer's abusive language, but to no avail. Although Halbauer has not alleged the race of these particular employees, Halbauer has plausibly alleged at this stage "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Sutherland*, 344 F.3d at 614 (alteration in original) (citation omitted).

As neither party disputes the second prong, the Court presumes Halbauer was qualified for his position as a mail carrier for the USPS in Louisville, Kentucky. *See Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007).

5

Regarding prong three, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "The Sixth Circuit has held that *de minimis* employment actions—such as temporary actions . . . without changes in salary, benefits, title, or work hours—do not constitute adverse employment actions." *Mocic v. Sumner Cty. Emergency Med. Servs.*, 929 F. Supp. 2d 790, 800 (M.D. Tenn. 2013) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). The action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (citation omitted). An adverse action, however, is also "indicated by . . . indices that might be unique to a particular situation." *Stone v. Bd. of Dirs. of Tenn. Valley Auth.*, 35 F. App'x 193, 199 (6th Cir. 2002) (citation omitted). The Court must "determine whether a particular employment action was 'objectively intolerable to a reasonable person.'" *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (citation omitted).

It is plausible that, in the context of Halbauer's job as a mail carrier, being given special dispensation to wear non-regulation shoes was a material benefit of his employment, especially considering Halbauer allegedly provided a physician's note to avoid wearing leather shoes. In an analogous situation, the Sixth Circuit held that the removal of a previous religious accommodation that "did not result in a change of title, job status, pay, or *job responsibilities and conditions*" was not an adverse change in employment, but only resulted in the plaintiff fulfilling a "requirement of the job for which he was hired . . . ." *Tepper*, 505 F.3d at 517 (emphasis added). Halbauer, however, has plausibly alleged the removal of his accommodation resulted in a change in job conditions, as his physician recommended that he not wear leather shoes. *See Gonzales v. Marriott*

6

*Int'l, Inc.*, 142 F. Supp. 3d 961, 985 (C.D. Cal. 2015) ("[I]f [the plaintiff] is able to prove that she was entitled to reasonable accommodation in the form of lactation breaks, paid or unpaid, the denial of such breaks could constitute adverse employment action, as it would materially change the conditions and privileges of her employment." (citation omitted)); *Wedow v. City of Kansas City*, 442 F.3d 661, 671 (8th Cir. 2006) (holding that inadequate protective clothing and restroom facilities for female firefighters were not "a mere inconvenience" as a matter of law). Accordingly, through discovery, Halbauer could show that losing his ability to wear sneakers rose above a *de minimis* employment action.[2]

>As to prong four, the Sixth Circuit has explained:
>
>The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects."

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citation omitted). The other employee ordinarily "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted). For example, "Plaintiff must show that a minority [employee] engaged in similarly-sanctionable conduct, but

---

[2] Halbauer also alleged he was told to remove his "MAGA" hat and that his supervisor warned him that if he wore it again, he would be "walked" out of the workplace. Halbauer was never fired, however, but voluntarily quit roughly five months later. A "reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action." *Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561, 566 (6th Cir. 2012) (citations omitted). Similarly, "it is settled in this circuit that a threat to discharge is not an adverse employment action" *Plautz v. Potter*, 156 F. App'x 812, 817 (6th Cir. 2005) (citing *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). Accordingly, absent an allegation that his supervisor's statement resulted in anything beyond a warning, Halbauer failed to allege any other materially adverse employment action.

received a less severe sanction. " *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008) (citation omitted). Halbauer and Spicer were both mail carriers at the same workplace, with the same supervisors, and allegedly only Spicer was allowed to violate the dress code by wearing sneakers. It is unclear which supervisors were involved in each incident, but at this stage, it is plausible that Halbauer and Spicer were similarly situated when Halbauer was treated differently. The Court, therefore, denies Defendant's motion to dismiss this claim.

### 2. *Hostile Work Environment*

Halbauer alleges he was subjected to a hostile work environment due to Spicer's attacks on his Christian religion and use of abusive language that offended his religious sensibilities. To state a claim for a hostile work environment based on religion, Halbauer must allege: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his religion; (4) the harassment was so severe and pervasive that it unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable because it knew or should have known of the harassment and failed to take appropriate action. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

To allege a hostile work environment, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). A plaintiff must show the working environment was objectively and subjectively hostile or abusive. *Id.* at 21-22. "Behavior that is not severe or pervasive enough to create a working environment that a reasonable person would find hostile or abusive or that the victim does not subjectively consider abusive is beyond the reach of Title VII." *Banks v. Appleton Papers, Inc.*, No.

3:02CV571, 2005 WL 5602039, at *10 (S.D. Ohio Mar. 28, 2005) (citing *Harris*, 510 U.S. at 21-22). "The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility." *Bowman*, 220 F.3d at 463 (citation omitted).

Initially, Halbauer fails to allege that most of Spicer's abusive language was based on his religion. Although Halbauer alleges other employees complained about Spicer's conduct, Halbauer simply gives examples of Spicer's abrasive behavior and alleges the employees reported her conduct. He does not, however, allege their complaints involved any sort of religious discrimination. Similarly, Halbauer merely asserts that he frequently reported Spicer's foul language but not that such language was based on his religion or even that in these instances Spicer knew her language offended him.

Under prong four, Halbauer does claim he was subjectively offended by Spicer's conduct and that he quit his job and entered counseling. Spicer's only comment based on Halbauer's religion, however, occurred once over the course of five months. Comparing Halbauer's allegations to conduct claimed in other cases, Halbauer does not allege an objectively hostile work environment. *See, e.g.*, *Hafford*, 183 F.3d at 514 (holding that workplace accusations that a Muslim plaintiff was preparing for a "holy war," fraternizing with inmates over the Muslim religion, and that his religion taught him to hate white people, were "insufficient to show a hostile work environment . . . ."); *Cole v. Swagelok Corp.*, 1:16CV3009, 2017 WL 4777055, at *7 (E.D. Ky. Oct. 23, 2017) (noting that "bathroom stalls with anti-Islamic slurs and a pamphlet left on plaintiff's workstation of Christian proselytizing material addressed to 'My Muslim Friend' did not rise to the level of a hostile work environment." (citing *Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x 747, 749 (6th Cir. 2005))); *Bostic v. City of Jenks*, No. 19-CV-0541-CVE-JFJ, 2020 WL 3065915, at *6 (N.D. Okla. June 9, 2020) (holding that, when an employee

9

"used Jesus Christ's name in vain", allegations were insufficient to "suggest [the] comments . . . were so frequent or pervasive that this could have altered the terms or conditions of plaintiff's employment.").

Title VII is not meant to be a "general civility code," and "the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not sufficient to establish liability under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). As the Sixth Circuit has stated, "[o]ffensive though these incidents *may have seemed to him*, they do not paint a picture of an environment creeping with anti-Christian sentiment." *Henry v. Fed. Rsrv. Bank of Atlanta*, 609 F. App'x 842, 845 (6th Cir. 2015) (emphasis added). The Court therefore grants Defendant's motion as to this claim.

Halbauer may therefore only pursue his Title VII reverse discrimination claim.

### IV.  CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 15) is **GRANTED IN PART** and **DENIED IN PART**.

Greg N. Stivers, Chief Judge
United States District Court

May 10, 2021

cc:   counsel of record

10