UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00533-GNS-RSE

JAMES HALBAUER, JR.                                                                             PLAINTIFF

v.

LOUIS DEJOY                                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 49). The matter is ripe for adjudication. For the reasons below, the motion is **GRANTED**.

**I.      STATEMENT OF FACTS**

Plaintiff James Halbauer, Jr. ("Halbauer") is a white male who was employed as a mail carrier for the United States Postal Service ("USPS") in Louisville, Kentucky. (Compl. ¶ 8. DN 1). On August 22, 2019, before clocking in, Halbauer arrived at work wearing a "MAGA" hat[1] when an African American co-worker, Marcelina Spicer ("Spicer"), yelled at him, calling him "racist" numerous times. (Compl. ¶ 9). In response, a union steward asked Spicer to stop yelling, to which Spicer replied with profanity. (Compl. ¶ 11). The steward did not address the situation any further. (Compl. ¶ 12). After Halbauer clocked in, he removed his hat and a different supervisor allegedly confronted him and told him that if he wore the hat again, the supervisor would escort him from the premises. (Compl. ¶¶ 15-16). Roughly a week later, Spicer wore a

---

[1] Referencing former President Trump's slogan to "Make America Great Again."

"Black Lives Matter" hat to work and refused to remove it even after Halbauer notified their supervisor. (Compl. ¶ 17).

In another instance, Spicer showed up to work out of uniform. (Compl. ¶ 20). She was instructed by her supervisor to put on her uniform and deliver mail, but she refused and she was not reprimanded. (Compl. ¶ 20). On November 25, 2019, Spicer wore sneakers in violation of a USPS regulation requiring mail carriers to wear leather shoes; she was not required to change. (Compl. ¶ 22). Days later, a supervisor posted an "edict" requiring every employee to be in the correct uniform while at work and stating that failure to do so would result in the employee being sent home. (Compl. ¶ 23). Regardless, on December 20, 2019, Halbauer and other employees arrived at work wearing sneakers and they were required to change into leather shoes, even though Halbauer had previously provided a doctor's note allowing him to wear sneakers. (Compl. ¶ 24). Again, on January 9, 2020, Spicer came to work wearing sneakers, but this time the supervisor asked her why she was wearing the wrong shoes, to which she responded with expletives. (Compl. ¶ 25). Halbauer was nearby and asked his supervisor to stop Spicer from using words that offended him. (Compl. ¶ 26). The supervisor asked her to calm down, but Spicer continued. (Compl. ¶ 28).

Halbauer asserts that because of his supervisors' discrimination he was unable to continue working at USPS and had to enter counseling. (Compl. ¶ 30). Halbauer filed an EEO complaint on May 11, 2020, which was denied, giving him the right to file suit. (Def.'s Mot. Summ. J. Ex. 4, DN 49-4 [hereinafter EEO Compl.]; Def.'s Mot. Summ. J. Ex. 6, DN 49-6). Halbauer accordingly sued Defendant Louis DeJoy ("DeJoy"), the Postmaster General of USPS, asserting claims for reverse discrimination and a hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), a claim under the Kentucky Civil Rights Act, and a claim for

negligent infliction of emotional distress. (Compl. ¶¶ 31-54). In a previous Memorandum Opinion and Order, the Court dismissed all of Halbauer's claims, except for his Title VII reverse discrimination claim. (Mem. Op. & Order 10, DN 20). DeJoy now moves for summary judgment on that claim. (Def.'s Mot. Summ. J., DN 49 [hereinafter Def.'s Mot.]).

## II. JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial," but the evidence is "not required to be resolved conclusively in favor of the party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. DISCUSSION

### A. Halbauer Has Not Exhausted His Administrative Remedies

DeJoy contends that Halbauer has not exhausted his administrative remedies for his racial discrimination claim as Halbauer only alleged religious discriminatory harassment in his EEO complaint; thus, his right to sue does not extend to racial discrimination. (Def.'s Mot. 6). "The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in [the EEOC regulations]." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009) (alterations in original) (quoting *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). To properly exhaust this remedy, an aggrieved party must consult an EEO counselor within forty-five days of the date of the discriminatory action in an effort to resolve the matter informally. 29 C.F.R. § 1614.105(a)(1). After obtaining a right-to-sue letter, "[t]he judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991) (citation omitted). The Sixth Circuit has explained that a claim is reasonably expected "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim . . . ." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

Halbauer's charge of racial discrimination does not satisfy this reasonable expectation because the information he provided would not prompt the EEOC to investigate such a claim. (*See* EEO Compl.). Notably, when prompted to select the type(s) of discrimination he experienced in the EEO complaint, Halbauer marked only the box for religious discrimination and did not mark the race discrimination box. (EEO Compl. 1). The checked boxes in a form complaint are not dispositive but they do contribute to the assessment of the whole complaint. *See Dixon v. Ashcroft*,

392 F.3d 212, 217 (6th Cir. 2004). Halbauer's narrative in his complaint also failed to identify a possible claim of racial discrimination to the EEO because, although he did list his grievances regarding Spicer and management, he did not reference Spicer's race or the race of anyone in management, nor that anyone in management favored Spicer (or others) due to race. Ultimately, Halbauer did not describe any purported race-based discrimination he experienced.

Halbauer remarked that Spicer called him racist and that he was threatened with discipline for wearing a "MAGA" hat, despite Spicer not being disciplined when she wore a "Black Lives Matter" hat. (EEO Compl. 2). These allegations are too attenuated to notify the EEO of a potential claim of racial discrimination. The only mention of race in Halbauer's complaint relates to a reported exchange with another mail carrier (not Spicer) who asked Halbauer what was wrong with his hat and what Spicer would do if the carrier put it on, to which Halbauer responded, "I guess your [sic] be a stupid black guy . . . ." (EEO Compl. 5). Halbauer's lone reference to another carrier's race is also insufficient to notify the EEO of a potential claim for race-based disparate treatment. Therefore, the EEO was not on notice of Halbauer's intention to allege racial discrimination. Consequently, did not properly exhaust his administrative remedies on this charge.

Halbauer argues that failure to exhaust does not preclude his racial discrimination claim because exhaustion is not jurisdictional. (Pl.'s Resp. Def.'s Mot. Summ. J. 6, DN 51 [hereinafter Pl.'s Resp.]). He cites *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), to assert that Title VII's exhaustion requirement is a claim-processing rule rather than a jurisdictional rule. (Pl.'s Resp. 6); *cf. Fort Bend*, 139 S. Ct. at 1849 (stating that claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." (citation omitted)). Indeed, the Supreme Court held that the exhaustion requirement is not jurisdictional by noting that the exhaustion requirement "is a processing rule, *albeit a mandatory*

5

*one*, not a jurisdictional prescription delineating the adjudicatory authority of the courts." *Fort Bend*, 139 S. Ct. at 1850-51 (emphasis added). Therefore, exhaustion is required but this defense may be forfeited. *See id.* at 1849; *Strickland v. City of Detroit*, 995 F.3d 495, 510 (6th Cir. 2021).

Halbauer claims DeJoy forfeited the exhaustion defense because it was not mentioned in the Answer or motion to dismiss. (Pl.'s Resp. 6). To the contrary, DeJoy asserted the defense in the Answer. (Answer 9 ¶ 15, DN 23 ("Plaintiff's claims are barred to the extent the allegations contained in the Complaint go beyond the allegations contained in Plaintiff's administrative charge of discrimination.")). When the defense is raised before the district court, it is "properly invoked" and must be enforced. *Kilpatrick v. HCA Hum. Res., LLC*, 838 F. App'x 142, 146 (6th Cir. 2020); *see also Dale v. City of Paris*, No. 5:20-324-DCR, 2022 U.S. Dist. LEXIS 8049, at *35 (E.D. Ky. Jan. 10, 2022) (concluding that a defendant had not forfeited the defense considering it was asserted in multiple pleadings and a motion for summary judgment). In contrast, a defendant forfeits the defense when arguing it for the first time on appeal. *Strickland*, 995 F.3d at 509-10; *see also Fort Bend*, 139 S. Ct. at 1851-52 (affirming that a defendant forfeited exhaustion as a defense when it was not raised until after a round of appeals five years into the litigation). DeJoy asserted this defense directly in both his Answer and his motion for summary judgment. Therefore, this defense has not been forfeited and the mandatory claim-processing rule must be applied. Accordingly, summary judgment will be granted in DeJoy's favor. Notwithstanding this failure, DeJoy is also entitled to summary judgment because Halbauer cannot establish a *prima facie* case, as discussed below.

   **B.**  **Halbauer Cannot Establish a *Prima Facie* Case**

To establish a *prima facie* case of employment discrimination under Title VII, Halbauer must demonstrate: "(1) he is a member of a protected class; (2) he was qualified for his job; (3)

he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citation omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (detailing the burden shifting framework of discrimination claims which requires the plaintiff to first establish the *prima facie* case); *cf. Brown v Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (noting that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment").

### 1. *Halbauer Cannot Demonstrate that USPS Discriminates Against the Majority*

Considering Halbauer alleges "reverse discrimination" as a member of the majority, he must satisfy the first prong of the *prima facie* case by "demonstrat[ing] 'background circumstances [to] support the suspicion that [USPS] is that unusual employer who discriminates against the majority.'" *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (first alteration in original) (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)). This may be shown "through a variety of means, such as statistical evidence; employment policies demonstrating a history of unlawful racial considerations; evidence that the person responsible for the employment decision was a minority; or general evidence of ongoing racial tension in the workplace." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 502 F. App'x 523, 536 (6th Cir. 2012) (citation omitted). This is not an "onerous" burden and "only requires a plaintiff to 'support the suspicion that the defendant . . . discriminates against the majority' . . . ." *Id.* (emphasis omitted) (citations omitted).

Halbauer has not provided any statistical evidence of discrimination, nor has he alleged that anyone in management is a minority. (*See* Halbauer Dep. 27:10-15, June 3, 2022, DN 51-3 (stating that the station manager and both supervisors are white)). Halbauer details several

7

occurrences to support his proposition that USPS gives non-white employees preferential treatment. First, Halbauer alleges that USPS did not allow him to be out of uniform but failed to discipline Spicer and other non-white employees for the same violation. (Halbauer Dep. 37:22-23, 68:22-24). Halbauer concedes, however, that other white employees were also not reprimanded for being out of uniform. (Halbauer Dep. 79:5-8, 15-19). Therefore, Halbauer does not establish race-based preferential treatment. *See Sullivan v. Paycor, Inc.*, No. 3:13-CV-00028-H, 2013 U.S. Dist. LEXIS 73169, at *13-14 (W.D. Ky. May 23, 2013) (collecting cases noting that favoritism does not violate Title VII).

Halbauer also takes issue with Spicer not being disciplined for her outbursts at other employees, including himself. (*E.g.*, Halbauer Dep. 121:5-11). Halbauer has not demonstrated that he or any other white employee had similar outbursts that received disciplinary action. (Halbauer Dep. 135:22-136:11); *cf. Treadwell v. Am. Airlines, Inc.*, 447 F. App'x 676, 679 (6th Cir. 2011) ("The examples of African-American employees whom the company did not fire for professional mistakes do not suffice because without some comparison to the company's treatment of Caucasian employees they tell us nothing about whether [the defendant] is 'that unusual employer who discriminates against the majority.'" (citation omitted)). Furthermore, when multiple employees were sent home for uniform violations on December 20, 2019, Halbauer has not established that only white employees were sent home. (Halbauer Dep. 90:25-92:19). Therefore, Halbauer has not demonstrated that USPS engaged in race-based preferential treatment.

Halbauer also references several incidents that tangentially implicated race, such as Spicer calling Halbauer racist and another employee claiming that Halbauer said the "n-word." (Halbauer Dep. 139:19-21, 140:15-21). These conflicts occurred amongst the employees and did not involve

8

management, however, so they do not evidence ongoing racial tensions to support the suspicion that USPS discriminated against white employees. *See Johnson*, 502 F. App'x at 536.

Accordingly, Halbauer has not demonstrated that USPS discriminates against the majority.

### 2.    *Halbauer Is Qualified for His Position as a Mail Carrier*

Neither party disputes the second prong, so Halbauer is presumed to be qualified for his position as a mail carrier for the USPS in Louisville, Kentucky. *See Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007).

### 3.    *Halbauer Did Not Experience a Significant Change in Employment Status*

Halbauer must show that he suffered an adverse employment action that resulted in a significant change in employment status. *White*, 533 F.3d at 391. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," and typically involve a "significant change in employment status" which can be evidenced by "inflict[ion of] direct economic harm." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (citation omitted); *Leavey v. City of Detroit*, 467 F. App'x 420, 425 (6th Cir. 2012) (citation omitted); *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (quoting *Burlington Indus.*, 524 U.S. at 761). An adverse action may also be established by case-specific "indices." *Stone v. Bd. of Dirs. of Tenn. Valley Auth.*, 35 F. App'x 193, 199 (6th Cir. 2002) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). Courts must "determine whether a particular employment action was 'objectively intolerable to a reasonable person.'" *Freeman*, 200 F. App'x at 442 (citing *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)); *see id.* at 442-

43 ("In short, the action must have a 'significant detrimental effect' on the employee's status as evidenced by objective factors, not subjective impressions." (internal citation omitted)). "The Sixth Circuit has held that de minimis employment actions—such as temporary actions . . . without changes in salary, benefits, title, or work hours—do not constitute adverse employment actions." *Mocic v. Sumner Cnty. Emergency Med. Servs.*, 929 F. Supp. 2d 790, 800 (M.D. Tenn. 2013) (citing *Bowman*, 220 F.3d at 462).

Halbauer claims he suffered an adverse employment action when "he was denied a reasonable accommodation . . . for [his] foot condition," and that it "is not a *de minimis* employment action because it affects his health."[2] (Pl.'s Resp. 7). Halbauer provided his station manager and supervisor a note from his podiatrist indicating that he would benefit from wearing non-regulation shoes at work.[3] (Halbauer Dep. 27:19-22, 28:14-24). Halbauer's station manager confirmed that the shoes were permissible, but Halbauer was later told by another supervisor that he could not wear them under USPS safety policies. (Halbauer Dep. 29:4-6, 29:8-15; *see* Cole Decl. Attach. 1, at 3, DN 50).

Halbauer's inability to wear his desired shoes, even for medical reasons, does not constitute an adverse employment action. This decision did not affect Halbauer's salary, benefits, title, hours, or position, so it is *de minimis*. *See Mocic*, 929 F. Supp. 2d at 800. Halbauer was not fired,

---

[2] As noted previously, Halbauer's only remaining claim alleges racial discrimination under Title VII. Notably, Halbauer has not brought a claim under the Americans with Disabilities Act ("ADA"), despite the crux of his claims seeming to center around his desired medical accommodation. (*See* Compl.). Halbauer's claims regarding USPS' failure to accommodate his medical needs are only viewed in the context of whether denial of his requests amount to an adverse employment action due to his race; this Court does not attempt to analyze Halbauer's claims under the standards set forth in the ADA. *See Clark v. City of Dublin*, 178 F. App'x 522, 524 (6th Cir. 2006) ("Courts have explicitly held that Title VII does not cover . . . disability discrimination claims. The appropriate remedy for . . . disability discrimination claims comes from the . . . ADA . . . ." (internal citations omitted)).

[3] It does not appear that this note has been filed in the record.

demoted, or denied a promotion; to the contrary, a member of USPS management encouraged Halbauer to consider joining management. (Halbauer Dep. 113:17-19). Plainly, Halbauer did not suffer economic or professional harm, rendering the denial of his accommodation a "mere inconvenience." *See Freeman*, 200 F. App'x at 442; *Kocsis*, 97 F.3d at 886. Therefore, it is not "objectively intolerable to a reasonable person," and does not amount to an adverse employment action. *Freeman*, 200 F. App'x at 442 (*Policastro*, 297 F.3d at 539); *see Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012) (finding that an employer's failure to adjust an employee's work schedule to accommodate her narcolepsy was not an adverse employment action for the purposes of her Title VII sex discrimination claim).

Furthermore, this is not a unique situation where the denial of Halbauer's accommodation request could be interpreted as an adverse employment action because he still had avenues to seek this accommodation. *See Stone*, 35 F. App'x at 199. USPS policies dictate that employees may request permission to wear non-regulation shoes by "submit[ting] their request for exception, in writing (with appropriate supporting documentation), to the district Human Resources manager." (Cole Decl. Attach. 3, at 1, DN 50). Halbauer did not make such a request; he only sought permission from his station manager and supervisors. (Halbauer Dep. 32:22-33:3, 33:10-17). Halbauer was told to submit his request through the District Reasonable Accommodation Committee process ("DRAC"). (Halbauer Dep. 33:12-15). DRAC is available for employees who request reasonable accommodation due to being unable to comply with policies, such as uniform requirements, but Halbauer never sought an accommodation through DRAC. (Cole Decl. ¶¶ 4-5, 10, DN 50; *see* Halbauer Dep. 38:7-13). Halbauer claims he did not follow this procedure because he thought it would risk termination because when Spicer allegedly "worked herself out of a job"

11

when she went to DRAC. (Halbauer Dep. 34:2-3, 42:19-25).[4] Spicer continued to work at USPS, however. (*See* Halbauer Dep. 43:1-44:3; Cole Decl. ¶ 10); *cf. Thomas v. Potter*, 93 F. App'x 686, 688 (6th Cir. 2004) ("An adverse employment action is something more than a threat of discharge." (citation omitted)). Halbauer's failure to avail himself to this process further undermines his assertion that this *de minimis* action is significant due to health implications.

### 4. *Halbauer Cannot Demonstrate That He Was Treated Differently Than Similarly Situated Non-Protected Employees*

Halbauer must also demonstrate that USPS "treated differently employees who were similarly situated but not members of the protected group." *Zambetti*, 314 F.3d at 255 (internal quotation marks omitted) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" (citation omitted)). For example, a plaintiff "must show that a minority [employee] engaged in similarly-sanctionable conduct, but received a less severe sanction." *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008) (citation omitted).

The parties disagree as to whether Halbauer and Spicer were similarly-situated employees, but this contention is immaterial considering Halbauer cannot demonstrate that he was treated differently than non-white employees. As previously discussed, USPS' purported failure to

---

[4] Halbauer apparently also had other reasons for not engaging in the DRAC process. (*See, e.g.*, Halbauer Dep. 33:15-17 ("But I don't see why I have to do a DRAC when you're allowing certain people to wear the shoes and they don't have to do a DRAC."). *But see* Cole Decl. ¶ 10 ("Spicer was approved to wear [non-regulation shoes]."); Cole Decl. Attach. 5, at 12, DN 50 (providing Spicer with DRAC approval to wear non-regulation shoes)).

discipline Spicer and other non-white employees for uniform violations does not constitute disparate treatment because white employees were similarly not punished for the same conduct. (Halbauer Dep. 37:22-23, 68:22-24, 79:5-8, 79:15-19).  Furthermore, USPS' failure to discipline Spicer for outbursts do not demonstrate disparate treatment because there has been no showing that some employee engaged in such conduct, let alone was punished for it. (Halbauer Dep. 121:5-11, 135:22-136:11).  There is also nothing in the record to suggest that only white employees were sent home for being out of uniform on December 20, 2019.  (Halbauer Dep. 90:25-92:19). Therefore, Halbauer does not demonstrate preferential treatment for or against certain racial groups because they either received the same treatment or did not engage in the same conduct.  *See Sullivan*, 2013 U.S. Dist. LEXIS 73169, at *13-14.

Halbauer also alleged that he was treated unfairly because he was reprimanded and told to take off his "MAGA" hat, while Spicer was not reprimanded for wearing a "Black Lives Matter" hat.  (Compl. ¶ 32).  This is also insufficient to demonstrate disparate treatment because Halbauer was wearing campaign paraphernalia that he was not permitted to wear due to the Hatch Act, whereas Spicer's hat was not campaign-related and simply bore the name of a social movement. (*See* Halbauer Dep. 56:20-57:6); 5 U.S.C. § 7324(a).  Ultimately, Halbauer cannot show disparate treatment due to race.

Based upon the foregoing, DeJoy is entitled to summary judgment because Halbauer did not properly exhaust his administrative remedies and cannot establish a *prima facie* case for reverse racial discrimination.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (DN 49) is **GRANTED**. Plaintiff's claim is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

There being no just cause for delay, this is a final and appealable order.

Greg N. Stivers, Chief Judge
United States District Court

July 6, 2023

cc: counsel of record

14